IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | **CRIMINAL NO. 1:CR-96-005-03** |
| : | |
| **v.** : | |
| : | |
| **JULIO OTERO** : | |

## MEMORANDUM

Before the court is the Government's motion to dismiss Defendant Julio Otero's § 2255 motion. (Doc. 549.) The parties have briefed the issue, and on October 27, 2005, the court held an evidentiary hearing. For the reasons that follow, the court will dismiss Defendant's § 2255 motion.

**I.** **Background**

The facts are well known to the parties, thus the court will dispense with the facts in a brief recitation. On January 12, 1998, Defendant pleaded guilty to Count 14 of a multi-count fifth superseding indictment, pursuant to a negotiated plea agreement. The plea agreement provided in relevant part that a sentence of life imprisonment would be imposed, and that by pleading guilty and agreeing to such a life sentence, Defendant avoided a possible death sentence.

On June 25, 2001, Defendant filed *pro se* a motion to vacate his judgment and conviction pursuant to 28 U.S.C. § 2255. Following briefing by the parties, the court denied all claims raised in Defendant's § 2255 motion except for his ineffective assistance of counsel claim. With respect to Defendant's ineffective assistance of counsel claim, the court scheduled a hearing (hereinafter "the § 2255 hearing"). The § 2255 hearing was held on January 31, 2002. By an order dated

February 4, 2002, the court denied the remaining ineffective assistance of counsel claim.

During the briefing of Defendant's instant § 2255 motion, the Government did not raise the issue of statute of limitations. Moreover, the court did not base any of its rulings upon the statute of limitations. As the court will discuss in fuller detail, the statute of limitations for Defendant to file a § 2255 motion had run prior to his filing of the June 25, 2001 § 2255 motion.

On June 3, 2002, Defendant filed his notice of appeal, together with a motion under Fed. R. App. P. 4(a) (6) to reopen the time for filing a notice of appeal. The court granted Defendant's motion. Defendant filed an application for an issuance of a COA as to the appointment of counsel issue. The Third Circuit issued a COA by Order dated August 19, 2003, as to the appointment of counsel issue and also as to the question whether a court may *sua sponte* raise the bar of the statute of limitations in a § 2255 when neither the court below or any party has raised the issue.[1]

Following the completion of briefing and oral argument before a panel of the Third Circuit, but before a decision was issued, the Third Circuit granted a rehearing *en banc* as to the statute of limitations issue. On May 16, 2005, after rebriefing and reargument *en banc*, the Third Circuit vacated the judgment in Defendant's case based on the appointment of counsel issue and remanded the case to this court for proceedings consistent with its opinion.

---

[1] Defendant's appeal was consolidated with two habeas appeals from state convictions under 28 U.S.C. § 2254, and also with a § 2255 appeal from the District Court of Delaware entitled *U.S. v. Bendolph,* 409 F.3d 155 (3d Cir. 2005).

With respect to the issue of the statute of limitations, the Third Circuit stated: "As to the remaining issue of whether the District Court may consider the apparent untimeliness of Otero's § 2255 motion *sua sponte* on remand, we answer in the affirmative, provided the District Court gives notice and opportunity to respond, and a prejudice analysis consistent with this opinion and our prior decision in *Long* [*v. Wilson,* 393 F.3d 390 (3d Cir. 2004)]."

**II.      Discussion**

The Government seeks to have Defendant's § 2255 motion dismissed based on the applicable one-year statute of limitations. *See* the Anti-Terrorism and Effective Death Penalty Act of 1996. In response, Defendant asserts that he completed a § 2255 motion and attempted to mail it on May 18, 1999; however, for reasons beyond his control his § 2255 was never received by the clerk of court. Defendant argues that the court should consider his § 2255 motion to be timely filed or in the alternative, the court should equitably toll the statute of limitations.

In response, the Government denies the factual allegations in Defendant's brief claiming to have filed a § 2255 motion on May 18, 1999. The Government requested an evidentiary hearing to address the issue. On October 27, 2005, the court held an evidentiary hearing with respect to the issue of whether Defendant filed or attempted to file a § 2255 motion on or about May 18, 1999, and to address any additional issues surrounding the application of the applicable statute of limitations.

As stated, the Third Circuit indicated that before the court can *sua sponte* impose the statute of limitations the court must first give a defendant notice

and opportunity to respond, and a prejudice analysis. With respect to these issues, Defendant states that "[t]o the extent [Defendant] has been prejudiced by any delay in raising the issue of the Statute of Limitations, that prejudice is obviated by the Court's consideration of [Defendant's] response to the Government's Motion and the Court's notice." (Def.'s Brief in Opp'n 6-7.) While the court finds that Defendant has essentially conceded that there was no prejudice, the court will examine whether or not there has been any prejudice suffered by Defendant consistent with the analysis provided by the Third Circuit in the instant case.[2]

The first question that the court must ask is how late in the case was the statute of limitations issue raised? *Bendolph,* 409 F.3d at 168. "As noted, delay alone is not dispositive and must be considered along with the other components of prejudice that we identified in *Long*." *Id.* at n.22. On June 3, 2002, Defendant filed his appeal. On August 19, 2003, the Third Circuit issued a COA directing the parties to address the statute of limitations issue. In its brief before the Third Circuit on the issue of the statute of limitations, the Government made known its intention to raise the issue of the statute of limitations by a motion to amend once the case was remanded to the district court. As the court will discuss in detail, Defendant's "habeas petition unquestionably was untimely." *Long*, 393 at 399.

With respect to the issue of delay, the court must look to whether Defendant "had commenced costly or time-consuming discovery, suffered a loss or a diminution of his ability to prepare his case, or lost another litigation opportunity

---

[2]In addition, during the October 27, 2005 evidentiary hearing the court asked Defendant's counsel "do you feel that you've responded to the statute of limitations from a legal point of view?" Defense counsel responded that "I think we've responded as fully as we are able to under the existing law." During the evidentiary hearing, Defendant did not argue that he was prejudiced as a result of the court, *sua sponte*, imposing the one-year statute of limitations.

4

elsewhere." *Id* at 169.  There is no indication that Defendant has commenced time consuming or costly discovery.  There is no indication nor does Defendant make any assertion that he has suffered any loses in his ability to prepare for the case and Defendant has not lost an opportunity to pursue the litigation elsewhere.

The "prejudice inquiry looks next to whether [Defendant] had sufficient opportunity to respond to the issue, once raised." *Id*.  The court finds that Defendant has had ample time and opportunity to respond to the issue.  The court, at the request of the Government, provided for an evidentiary hearing so that the court could determine the merits of Defendant's claims that he filed or attempted to file a § 2255 motion on May 18, 1999.  Thus, Defendant has been given ample notice and opportunity to respond.

Finally, the court is to consider whether the Government acted in bad faith.  *Id*.  There is no indication and Defendant makes no assertion that the Government acted in bad faith.  Thus, the court finds that Defendant has suffered no prejudice with respect to the delay in raising the issue of the statute of limitations.

Accordingly, the court must now look to whether Defendant did in fact file or attempt to file a § 2255 motion on May 18, 1999, and if so whether to deem it filed or to equitably toll the statute of limitations.  For the reasons that follow, the court finds that Defendant did not file or attempt to file a § 2255 motion on May 18, 1999.  Based upon the applicable statute of limitations the court will dismiss Defendant's § 2255 motion.

Defendant was originally sentenced on November 27, 1998.  Defendant took no direct appeal.  Thus, absent any equitable tolling, any motion under § 2255 would have had to have been filed on or before November 27, 1999.  Following

Defendant's sentencing, he was transferred to United States Penitentiary Allenwood ("USP-Allenwood"). According to Defendant, his command of the English language is not strong; however, Defendant alleges that with the help of fellow USP-Allenwood inmate, Leonard Taylor, he began preparation of a § 2255 motion alleging, among other things, ineffective assistance of counsel.[3] According to Defendant, on May 18, 1999, he provided his § 2255 motion to prison official, R. Matlack, Case Manager, USP-Allenwood, who in turn allegedly notarized a "proof of mailing" dated May 18, 1999. (Def.'s Ex. 1.) Thus, Defendant alleges that his § 2255 motion was mailed on May 18, 1999. Defendant has no other proof that a § 2255 motion was mailed on May 18, 1999.

With respect to the alleged notarization of the proof of mailing, the Government contends that it is a fraud. As proof, the Government points to the stamp which appears on the document. The stamp that appears on the document is a personalized stamp that bears the name of R. Matlack. The government contends and offers evidence and sworn testimony that R. Matlack was not in possession of a personalized stamp on May 18, 1999. According to the Government, R. Matlack did not receive a personalized stamp until September 2000. Prior to receiving the personalized stamp, R. Matlack used a generic stamp that required him to handwrite his name.

In support, the Government provided the testimony of R. Matlack, whose testimony was consistent with the Government's contentions. Moreover, R. Matlack indicated that he always handwrote the dates on the documents he signed;

---

[3] According to Defendant, Leonard Taylor is deceased. Accordingly, Mr. Taylor was not available as a witness.

however, the May 18, 1999 "proof of mailing" included a typed date not a handwritten written date.

While R. Matlack stated that the stamp and the signature appearing on the "proof of mailing" appeared to be his own, he testified that inmates have unsupervised access to photocopiers. Thus, it is not outside of the realm of possibilities that a document stamped and signed by R. Matlack could be photocopied onto another document. However, according to the testimony and evidence produced by the Government, it is impossible that the R. Matlack could have stamped the "proof of mailing" with his personalized stamp anytime prior to September 2000.

The Government also provided the testimony of Cynthia Cali, a Unit Secretary at USP-Allenwood. Cynthia Cali is responsible for the ordering of stamps and provided testimony consistent with the Government's assertions. Finally, the Government produced credit card purchase forms dated September 2000 (Gv't's Ex. 2), an order for the personalized stamp (Gv't's Ex. 3), a copy of the receipt of the order indicating that the personalized stamp was to be sent in September of 2000 (Gv't's Ex. 4). The Government also produced copies of the stamp used by R. Matlack before September 2000 (Gv't's Ex. 6) and after September 2000 (Gv't's Ex. 5).

In or about January 2000, Defendant engaged in a fight and was placed in the Special Housing Unit ("SHU") until June 2000. When Defendant was removed to the SHU his possessions were removed from him, allegedly including a copy of the May 18, 1999 § 2255 motion. Defendant states that when he was returned to the general population he requested among other things, "legal work (my 2255 motions,

7

letters to the court, and research materials in one folder)." (Def.'s Ex. 2.) This request was sent to Mr. Denger. In response to his request, Defendant was told to "file a tort." (Affidavit of J. Otero ¶ 5-6.) The court notes that there is no evidence that any letters had been sent to the court.

It is undisputed that from May 18, 1999 until June 2001, Defendant did not receive notification from the court that it had received a § 2255 motion. Moreover, there is no indication that Defendant inquired with the court regarding the status of the allegedly filed 1999 § 2255 motion until June 2001. (*See* Affidavit of Maria Nieves.)

According to Defendant, as time passed he began to wonder about the status of his allegedly filed § 2255 motion. In June of 2001, Defendant became aware that there was no record of his filing a § 2255 motion. (*Id*.) Defendant alleges that because he no longer had a copy of the 1999 § 2255 motion he was required to draft an entirely new § 2255 motion.

It is undisputed that Defendant submitted a § 2255 motion on June 25, 2001 (hereinafter "the 2001 § 2255 motion"). With respect to the 2001 § 2255 motion, Defendant answered "no" to question eight, which asked if Defendant had appealed the judgment. Defendant also answered "no" to question ten which asked: "Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications concerning this judgment of conviction in any court?" Thus, it appears that Defendant himself indicated that he did not file a § 2255 motion prior to June 2001.

The court finds that the evidence presented overwhelmingly supports that Government's position that Defendant did not file a § 2255 motion on May 18,

8

1999. Beyond the inconsistencies in Defendant's allegations and evidence that the "proof of mailing" was a fraud, Defendant, in his June 2001 § 2255 motion, indicated that he did not file a previous § 2255.

### III. Conclusion

In accordance with the Third Circuit's opinion in *United States v. Bendolph*, the court finds that it is proper to raise to issue of the statute of limitations *sua sponte*. The court finds that Defendant did not file a § 2255 motion within the applicable one-year statute of limitations. The court will not deem Defendant's § 2255 motion to be timely filed nor will the court equitably toll the statute of limitations. The court finds that Defendant has been given notice, an opportunity to respond, and that Defendant has suffered no prejudice from the delay in raising the issue of the statute of limitations. Accordingly, the court finds that Defendant's § 2255 motion is time barred by the applicable one-year statute of limitations and will grant the Government's motion to dismiss.

s/Sylvia H. Rambo  
SYLVIA H. RAMBO  
United States District Judge

Dated: October 31, 2005.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**UNITED STATES OF AMERICA** : **CRIMINAL NO. 1:CR-96-005-03**
:
:
**v.** :
:
:
**JULIO OTERO** :

## O R D E R

In Accordance with the foregoing memorandum of law, **IT IS HEREBY ORDERED THAT:**

1) The Government's motion to dismiss Defendant's § 2255 motion (Doc. 549) is **GRANTED** and the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2255 is dismissed.

2) The court **GRANTS** a certificate of appealability.

3) The Clerk of Court shall close the case file.

                                                    s/Sylvia H. Rambo
                                                    SYLVIA H. RAMBO
                                                    United States District Judge

Dated: October 31, 2005.